UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-00125-JAW |
| | ) | |
| VICTOR CHARLES and APOLINAR | ) | |
| ORTIZ-ISLAS | ) | |

**ORDER ON THE DEFENDANTS' MOTION FOR CHANGE OF VENUE AND
MOTION FOR SEVERANCE**

Charged in the District of Maine with participating in a cocaine conspiracy, two Defendants, residents of Houston, Texas, move the Court for a change of venue to the Southern District of Texas and, if transferred, the Texas Defendants move to sever their case from a third Maine resident Defendant. Applying the ten factors set forth by the United States Supreme Court in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964), for evaluating motions for transfer under Federal Rule of Criminal Procedure 21(b), the Court concludes that the Texas Defendants failed to sustain their burden to demonstrate that a transfer to Texas would be for the convenience of the parties, the witnesses, or in the interests of justice. As the motion to sever was contingent upon the success of the motion to transfer, the Court denies both motions.

## I. STATEMENT OF FACTS

### A. Procedural History

On August 16, 2012, a federal grand jury issued a superseding indictment, charging Robert Rossignol, Victor Charles, and Apolinar Ortiz-Islas with engaging

1

in a conspiracy to possess with the intent to distribute cocaine, an alleged violation of 21 U.S.C. §§ 841(a)(1) and 846. *Superseding Indictment* (ECF No. 55). In addition, the grand jury indicted Mr. Rossignol alone for failing to report the importation of more than $10,000 in United States currency. *Id.* On January 7, 2013, Messrs. Charles and Ortiz-Islas, residents of Houston, Texas, moved for a change of venue and to sever Count One, the drug conspiracy charge, from Count Two, the currency charge. *Mot. for Change in Venue and Req. for Hr'g on Mot.* (ECF No. 116) (*Defs.' Venue Mot.*); *Defs.' Mot. for Severance of Counts and Defs.* (ECF No. 117) (*Defs.' Severance Mot.*). On January 28, 2013, the Government responded. *Gov't's Resp. to Defs.' Mot. to Transfer Venue for Trial and for Severance of Counts and Defs.* (ECF No. 120) (*Gov't's Opp'n*). On February 11, 2013, the Defendants replied to the Government's response to the motion to change venue only. *Reply to Gov't's Opp'n to Defs.' Mot. for Change in Venue* (*Defs.' Reply*).

### B.     The Facts According to the Defendants

In their motion, Messrs. Charles and Ortiz-Islas represented their understanding of the facts underlying the Government's case. *Defs.' Venue Mot.* at 1-7. It is a somewhat convoluted tale.

### 1.     Chad Hallett Crosses the Canadian Border

The story begins on June 27, 2012, when a man named Chad Hallett crossed the Canadian border with a female companion into the United States at the Houlton, Maine Port of Entry.[1] *Id.* at 2. He declared that the purpose of the trip

---

[1]     The Defendants' memorandum did not supply the date of this incident; however, the Court obtained it from the prosecution version of the offense that was filed and admitted to in the case

was to travel to Atlantic City, New Jersey for pleasure. *Id.* Although the car was searched at secondary inspection, nothing of note was found. *Id.* Nevertheless, Immigration and Customs Enforcement (ICE) followed the Hallett vehicle to a commercial parking lot in Houlton and observed Mr. Hallett meeting with another person. *Id.* That person was Robert Rossignol, a Co-Defendant. *Id.*

### 2.    Robert Rossignol, Chad Hallett and $300,000

At the parking lot, Robert Rossignol handed Mr. Hallett a cardboard box, which was placed in Mr. Hallett's trunk. *Id.* at 2. ICE agents followed Mr. Hallett as he left the parking lot and with the assistance of Maine State Troopers, they stopped him. *Id.* at 3. Mr. Hallett denied that he had received anything from anyone except a couple of cellphones that he had bought. *Id.* at 3. With the consent of Mr. Hallett's female companion, the law enforcement agents searched the trunk and found the cardboard box; inside was approximately $300,000 in cash. *Id.*

### 3.    Chad Hallett's Mission

Mr. Hallett spoke to the ICE agents and told them that his job was to bring the cash to Atlantic City, New Jersey and on June 28, 2012, he would meet a man named Matthieu LeBlanc. *Id.* Together they would travel to Houston, Texas, where they would meet a man named "Vic". *Id.* In exchange for the cash, they would receive cocaine at a rate of $29,000 per kilogram and hand the cocaine over to Mr. Rossignol. *Id.* Mr. Rossignol would then smuggle the cocaine back across the border to Canada. *Id.* Mr. Hallett said that he had made five or six similar trips

---

against Mr. Hallett. *See United States v. Hallett*, Docket No. 1:12-cr-00126-JAW, *Gov't's Version of the Offense* (ECF No. 34).

with Mr. LeBlanc for Mr. Rossignol and each time—with one exception—they received ten to twelve kilograms of cocaine in Houston. *Id.* at 3-4. The one exception was the receipt of twenty kilograms. *Id.* at 4. Mr. Hallett said that he never actually witnessed the exchange of cash for drugs. *Id.* He was, however, able to identify Mr. LeBlanc and Mr. Hallett later made some recorded telephone calls to Mr. LeBlanc, which incriminated Mr. LeBlanc in the conspiracy. *Id.*

### 4.   Matthieu LeBlanc's Knowledge

Mr. LeBlanc is the only witness who is able to identify Apolinar Ortiz-Islas as a co-conspirator. *Id.* In addition, Mr. LeBlanc also dealt with a man who went by the nickname "Polo" and Mr. LeBlanc may be able to identify Mr. Ortiz-Islas as "Polo". *Id.* at 4-5. Mr. LeBlanc also made recorded telephone calls to Victor Charles. *Id.* There are also recorded telephone conversations among Amy Charles (Victor Charles' wife), Mr. LeBlanc, and "Polo", which may help clarify whether "Polo" is Mr. Ortiz-Islas. *Id.* Ms. Charles lives in Texas. *Id.* at 5.

### 5.   "Polo", Apolinar Ortiz-Islas, and the Controlled Buy

Mr. LeBlanc arranged a controlled buy of ten kilograms of cocaine with "Polo" but instead of going himself, sent an undercover agent to make the purchase. *Id.* at 5-6. The undercover agent, who resides in Texas, met with Mr. Ortiz-Islas and Mr. Ortiz-Islas' son on September 18, 2012 in the parking lot of a business. *Id.* at 6. After some discussion among Mr. Ortiz-Islas, Mr. Ortiz-Islas' son, and Mr. LeBlanc, the undercover agent followed Mr. Ortiz-Islas to a location, where Mr. Ortiz-Islas got into a car with several passengers. *Id.* The agent then followed this car to a

4

residence where there were a number of men. *Id.* Before the transaction could take place, the arrest signal was given. *Id.* Some of the men at the residence fled and eluded arrest. *Id.* Approximately ten kilograms of cocaine were found in a truck parked at the residence. *Id.*

## II.   THE PARTIES' POSITIONS

### A.   The Texas Defendants' Positions on the Motions to Change Venue and to Sever

The Texas Defendants' positions on the motions to change venue and to sever are intertwined. The basis of the motion to sever is the assumption that the Charles and Ortiz-Islas cases will be transferred to Texas for trial. *Defs.' Severance Mot.* at 1-2. If their cases are transferred and Mr. Rossignol's is not, this would effect a severance, leaving Mr. Rossignol's case pending in the District of Maine and Mr. Charles' and Mr. Ortiz-Islas' cases pending in the Southern District of Texas. *Id.*

The Texas Defendants make their motion to transfer under Federal Rules of Criminal Procedure 18 and 21(b). FED. R. CRIM. P. 18, 21(b). They quote the language in Rule 18 that provides that the court "must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." *Defs.' Venue Mot.* at 7 (quoting FED. R. CRIM. P. 18). They note that the Court has the authority under Rule 21(b) to "transfer the proceeding, or one or more counts, against [a] defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." *Id.* (quoting FED. R. CRIM. P. 21(b)).

5

The Texas Defendants then review the ten factors that the United States Supreme Court set forth in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964) for deciding whether a motion to transfer for trial under Rule 21 should be granted: (1) the location of the defendant; (2) the location of the witnesses; (3) the location of the events likely to be in issue; (4) the location of relevant documents and records; (5) the disruption of the defendant's business; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessibility of place of trial; (9) the docket conditions in each district, and (10) any other special elements that may affect transfer. *Id.* at 243-44.

### 1.   Location of the Defendants

Regarding the first factor—the location of the defendants, Messrs. Charles and Ortiz-Islas point out that they are residents of Texas and, even though they have been brought to Maine, their families and contacts are in Texas. *Defs.' Venue Mot.* at 8.  They say this factor favors transfer.

### 2.   Location of Witnesses and the Events

Regarding the second and third factors—the location of the witnesses and the events, Messrs. Charles and Ortiz-Islas say that all the events involving them took place in Texas and this factor favors transfer. *Id.* at 8.  They say that they believe that the men who were arrested on the same date and location as Mr. Ortiz-Islas have been charged in Texas state court and they contend that this factor as well as the Texas location of other potential witnesses favors trial in Texas. *Id.* at 8-9.

### 3.   Location of Documents and Other Physical Evidence and Business Location

Regarding the fourth factor—the location of documents and other physical evidence, Messrs. Charles and Ortiz-Islas maintain that the physical evidence relating to the arrest is likely to be in Texas.  *Id.* at 9.  They do not mention the fifth factor—the business location issue.

### 4.     Expense to the Parties

Regarding the sixth factor—the expense to the parties, the Texas Defendants suggest that, although they are represented by appointed counsel, the investigative expenses would be less if they were allowed to proceed in Texas.  *Id.*

### 5.     Location of Counsel

Regarding the seventh factor—the location of counsel, they say that Texas defense counsel (and their investigators) would have the advantage of knowing the lay of the land in Texas and would have the added advantage of fluency in Spanish. *Id.*  They concede that there would be additional costs if the Assistant United States Attorney in Maine were to go to Texas to try the case, but they point to a website from the United States Attorney's Office in the Southern District of Texas, touting the expertise and competence of its prosecutors and the Texas Defendants suggest that the United States would be well represented in Texas.  *Id.* at 10-11.

### 6.     Relative Accessibility

Regarding the eighth factor—the relative accessibility of the place of trial, Messrs. Charles and Ortiz-Islas contend that for them a Maine trial would be remote.  *Id.* at 10.

### 7.     Relative Congestion of the Courts

Regarding the relative congestion of the district courts, the Texas Defendants concede that the Southern District of Texas is more congested than the District of Maine. *Id.* at 11.

### 8. Other Factors

The Texas Defendants say that the "other factors in this case would appear to favor adding one more case to that docket." *Id.* They note, for example, the benefit of having access to friends and family during the trial. *Id.* at 11-12.

### B. The Government's Opposition to the Motions to Transfer and to Sever

In its opposition, the Government analyzes the ten *Platt* criteria but comes to different conclusions. *Gov't's Opp'n* at 2-8.

### 1. Location of the Defendants

Regarding the location of the defendants, the Government says that although both Mr. Charles and Mr. Ortiz-Islas resided in the Houston, Texas area at the time of the events in this case, they have been brought to Maine. *Id.* at 2. Mr. Rossignol, the third Defendant, resides in Maine. *Id.* Contrary to the Texas Defendants' contention, the Government indicates that although Mr. Rossignol has suggested that he intends to plead guilty, he has not yet done so. *Id.* The Court notes, however, that after the Government filed its memorandum, Mr. Rossignol's Rule 11 hearing has been set for March 27, 2013. *See Notice of Hr'g* (ECF No. 122).

### 2. Location of Witnesses

Regarding the location of possible witnesses, the Government contends that the trial witnesses are "likely to be located in a number of places, including Maine,

8

Massachusetts, New Jersey, Texas, New Brunswick, Canada, and elsewhere." *Id.* at 3. The Government points out that one of the likely witnesses is a Homeland Security Investigations (HSI) case agent from Houlton, Maine. *Id.* Another HSI agent works in the Boston, Massachusetts office. *Id.* According to the Government, New Jersey HSI agents who were involved in the arrest and who worked with one of the cooperating defendants may be called to testify. *Id.* A member of the Royal Canadian Mounted Police, who investigated the events from the Canadian side of the border, may also be called to testify. *Id.*

The Government conceded that there "certainly will be witnesses from other districts", but it argues that "not all of the out-of-state witnesses are located in the Southern District of Texas." *Id.* It notes that the Texas Defendants have not identified any of their trial witnesses nor have they explained why any specific witness could not travel to testify in Maine. *Id.*

### 3.    Location of the Events

The Government views the events as being more broad-based than the Texas Defendants believe. It sees the events as taking place in New Brunswick, Maine, New Jersey, Texas and elsewhere. *Id.* at 4. It isolates the Maine events as including a seizure of $300,000 in cash, phone calls and text messages, meetings among co-conspirators to exchange cocaine, currency, and firearms, and the cross-border smuggling of cocaine, currency, and firearms. *Id.* The Government acknowledges that some "[m]eetings and cocaine transactions also occurred in Texas." *Id.*

The Government points out that the Texas Defendants focus on events on September 18, 2012 in Texas, but it stresses that the superseding indictment charges conspiracy that occurred between January 1, 2011 and June 28, 2012.  *Id.* The Government observes that the September 18, 2012 events took place three months after the conclusion of the charged conspiracy.  *Id.*; *see Superseding Indictment* at 1.  The Government acknowledges that such post-conspiracy evidence may be relevant, but emphasizes that neither Texas Defendant has been charged with any offenses arising out of the seizure of eleven grams of cocaine on September 28, 2012.  *Id.*

### 4.    Location of Documents and Other Physical Evidence

Although the Government says that most of the documents relevant to the charge are physically located in Maine, it admits that the location of the documents should not control venue.  *Id.* at 4-5.

### 5.    Business Location

The Government says that as the Texas Defendants are detained, there is no known potential disruption to any business that they might have been operating. *Id.* at 5.

### 6.    Expense to the Parties

The Government is decidedly skeptical about the Texas Defendants' assertions that the investigative expenses would be less if the trial were moved to Texas.  *Id.*  It points out that the Government has been able to use investigators from the HSI Office in Houston, Defendant Ortiz-Islas would have access to the

Federal Defender Office in Houston with two investigators, and that CJA funds would likely be available to Mr. Charles to hire a Houston investigator, if necessary. *Id.* The Government observes that the Texas Defendants have not accounted for any specific expense figures that they contend would be saved if venue were transferred. *Id.* at 5-6.

### 7. Location of Counsel

The Government notes that current counsel both for the Government and the Texas Defendants are located in Maine and are familiar with the case, and it says that transferring the case "to new defense counsel and potentially new prosecutors, this late in the litigation process, makes no sense." *Id.* at 6.

### 8. Relative Accessibility

In terms of relative accessibility, the Government says that as both moving Texas Defendants are already in Maine, there are no accessibility issues. *Id.*

### 9. Relative Congestion of the Courts

The Government does not take a position on this factor. *Id.*

### 10. Other Factors

The Government mentions that the Texas Defendants failed to provide any information to back-up their assertion that a trial in Maine would effectively foreclose their friends and family from attending. *Id.* at 7. The Government also says that one of the two Texas Defendants has been engaged in negotiations to enter a guilty plea, which would obviate the need to try that Defendant. *Id.*

### C. The Defendants' Reply

The Texas Defendants replied to some, not all of the Government's points.

### 1.   Location of Witnesses

The Texas Defendants say that the Government "agrees that many witnesses . . . are either in custody or are government agents who will need to travel from distant locations regardless of the location of the eventual trial in this matter." *Defs.' Reply* at 1.

### 2.   Location of Events

Noting that the Government conceded that the events in Texas may be relevant, the Texas Defendants assert that "it appears that the majority of evidence that will be presented regarding Mr. Ortiz-Islas post-dates the charged conspiracy. Therefore, the location of events likely to be disputed is in Texas." *Id.* at 1-2.

### 3.   Location of Documents

Mr. Ortiz-Islas contends that if he received large amounts of money for dealing drugs, there should be some evidence of his wealth in the Houston area and because his "financial dealings . . . will be an issue in any trial", the trial should be moved to Houston where "employers and other information regarding his sources of income, as well as expenses" would be located. *Id.* at 2.

### 4.   Expense to the Parties

The Texas Defendants concede that the expense of transporting witnesses to trial should not be a factor because the "expense will need to be approved by the Court and witness fees will be paid by the U.S. Marshal Service." *Id.* at 2-3.  At the same time, the Texas Defendants point out that these costs will be higher if the

trial is held in Maine.  *Id.* at 3.  They also say that traveling to Maine from Texas may cause the witnesses financial hardship because they will be forced to take time from work.  *Id.*

### 5.   Location of Counsel

The Texas Defendants acknowledge that new counsel in Texas would be required to come "up to speed" on the case, but they say that this type of communication "routinely occurs when any substitution of counsel occurs, and therefore is not out of the ordinary."  *Id.*

## III.   DISCUSSION

### A.   Legal Principles

Federal Rule of Criminal Procedure 21(b) addresses the transfer of a criminal matter from one district to another for purposes of trial; it provides:[2]

> Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.

FED. R. CRIM. P. 21(b).[3]  It is noteworthy that the Texas Defendants are not claiming that venue is improper in the District of Maine.  Instead, they are claiming that the Court should transfer the case to Texas in the interests of justice, not that it does not have the constitutional or statutory authority to hear the case.  *See* U.S. CONST.

---

[2]      The Texas Defendants also cite Rule 18, but by its own terms, Rule 18 does not apply.  *Defs.' Mot.* at 1, 7 (citing FED. R. CRIM. P. 18).  Rule 18 addresses the setting of a case for trial "within a district", not the transfer of a case from one district to another.  FED. R. CRIM. P. 18.

[3]      Rule 21 is divided into two sections.  Federal Rule of Criminal Procedure 21(a) addresses instances where the court "must transfer" a case to another district because it is "satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."  FED. R. CRIM. P. 21(a).  The Defendants have made no Rule 21(a) claim.

art. III, § 2; 18 U.S.C. § 3237(a).  The Texas Defendants bear the burden to demonstrate that transfer is appropriate.  *In re United States*, 273 F.3d 380. 388 (3d Cir. 2001); *United States v. Vieira*, Cr. No. 94-21-01ML, 2009 U.S. Dist. LEXIS 105034, at *5-6 (D.R.I. Nov. 4, 2009). Whether to transfer proceedings to another district rests within the discretion of the Court.  *United States v. Quiles-Olivo*, 684 F.3d 177, 181 (1st Cir. 2010).

In *Platt,* the United States Supreme Court listed a number of factors for a court to consider when evaluating a motion to transfer.  376 U.S. at 243-44.  Those factors include the location of the defendants, the location of the witnesses, the location of the events at issue, the location of documents and records, the potential for disruption of the defendant's business, the expense to the parties, the location of counsel, the docket conditions in the alternative districts, and any other special factors.  *Id.*  However, the significance of those factors "will vary depending on the facts of a given case." *Quiles-Olivo*, 684 F.3d at 184.

### B.   Analysis

#### 1.   Location of the Defendants

Here, each of the Defendants is currently located in Maine.  This factor favors trial in Maine.  *United States v. Diaz*, 1:11-cr-000184-JAW, 2012 U.S. Dist. LEXIS 166845, at *13-14 (D. Me. Sept. 27, 2012).  At the same time, the United States Supreme Court has suggested that the trial of a case should, whenever possible, take place in the district where the defendant lives.  *United State v. Johnson*, 323 U.S. 273, 275 (1944); *United States v. Cashin*, 281 F.2d 669, 675 (2d Cir. 1960).

This factor slightly favors transfer of the Texas Defendants' part of this alleged conspiracy to Texas.

### 2.    Location of Witnesses

There is a notable lack of specificity from the Texas Defendants as to which witnesses they intend to call and where those witnesses are currently located.  The Government says that it may call witnesses from New Brunswick, Canada, Maine, Massachusetts, New Jersey and Texas.   As the Texas Defendants themselves described the key players in the alleged conspiracy, they included Robert Rossignol, Chad Hallett, Matthieu LeBlanc, Victor Charles, and Apolinar Ortiz-Islas.   Mr. Rossignol is from Van Buren, Maine; Mr. Hallett and Mr. LeBlanc are from New Brunswick; and, Mr. Charles and Mr. Ortiz-Islas are from Houston.[4]   Potential law enforcement personnel appear to reside in New Brunswick, Maine, Massachusetts, New Jersey, and Texas.   Other than making a general assertion that there would be important witnesses in Texas, the Texas Defendants have not said who.

"Generally, a defendant is required to provide specific examples of the anticipated witnesses' testimony and of their inability to testify because of the location of the trial."  *Diaz,* 2012 U.S. Dist. LEXIS 166845, at *14.  In other words, "a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer . . . Defendants must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial . . . the

---

[4]     The residences of Messrs. Rossignol, Hallett, and LeBlanc do not appear as a matter of record in this case; however, they are listed in the synopses that the Government filed in their respective criminal cases.  *See United States v. Rossignol*, 1:12-cr-00125-JAW (D. Me.), *Superseding Synopsis* (ECF No. 57); *United States v. Hallett*, 1:12-cr-00126-JAW (D. Me), *Synopsis* (ECF No. 32); *United States v. LeBlanc*, 1:12-cr-00190-JAW (D. Me.), *Synopsis* (ECF No. 45).

court must rely on 'concrete demonstrations' of the proposed testimony." *United States v. Spy Factory*, 951 F. Supp. 450, 456 (S.D.N.Y. 1997) (quoting *United States v. Haley*, 504 F. Supp. 1124, 1126 (E.D. Pa. 1981)). Mr. Charles and Mr. Ortiz-Islas have not met their burden on this factor.

### 3. Location of Events

Again, from the Texas Defendants' description of the events in this case, a number of significant events in the conspiracy took place in the District of Maine: the smuggling of the drugs across the Maine-New Brunswick border, Mr. Hallett's interaction with the border agents at the Houlton Port of Entry, tailing Mr. Hallett to the parking lot in Houlton, Mr. Hallett's meeting with Mr. Rossignol, the transfer from Mr. Rossignol to Mr. Hallett, the search of Mr. Hallett's trunk, and the discovery of large amounts of cash in his trunk. It is true that some events took place in New Jersey, but either potential venue—Maine or Texas—would be inconvenient to witnesses from New Jersey, Texas slightly more so. As for the events in Texas, which took place after the dates of the conspiracy as alleged in the superseding indictment, the Court is not convinced that those events are any more significant to the trial of the pending charges than the events during the conspiracy that took place in Maine. This factor favors denial of the motion for transfer.

### 4. Location of Documents

With the advent of the digital age, this factor does not seem as significant today as it may have been in 1964 when the United States Supreme Court decided *Platt*. *See Johnson v. VCG Holding Corp.*, 767 F. Supp. 2d 208, 216-17 (D. Me.

16

2011) (noting that a similar factor in the analogous civil transfer analysis "seems like a holdover").  The Court is not convinced that documentary evidence of Mr. Ortiz-Islas' financial circumstances would be unavailable in Maine.  This factor does not favor transfer.

### 5.  Disruption of the Defendants' Businesses

The absence of evidence on this issue does not favor transfer.

### 6.  The Expense to the Parties

Although the Texas Defendants assert that a trial in Texas would be less expensive, they have offered only generalities.  The Court is not convinced that an investigation in Texas would be significantly less expensive if directed by defense counsel in Texas as opposed to defense counsel in Maine.

### 7.  The Location of Counsel

The Government and each Defendant are represented by Maine counsel.  A transfer to Texas would require either that the current prosecutors travel to Houston to try the case in an unfamiliar district or that new Texas-based prosecutors familiarize themselves with the case.  This has the obvious potential for causing delay and additional costs.  Although Maine defense counsel diminish the difficulty of transferring responsibility for this case to Texas defense counsel, it is true that if the case were retained in Maine, there would be no such transfer with its attendant costs and delay.  This factor favors retention of the case in Maine.

### 8.  Relative Accessibility

The relative accessibility factor involves whether the location of the trial is so remote that the parties, witnesses and others will have difficulty getting to court. *See Spy Factory*, 951 F. Supp. at 460. Although Houston is a major transportation hub, Bangor has an airport and is accessible. *See United States v. United States Steel Corp.*, 233 F. Supp. 154, 158 (S.D.N.Y. 1964) ("The efficiency of modern air transportation renders rather sterile any argument based upon differences in distances from the respective courthouses").

### 9.   Relative Congestion of the Courts

Without knowing more about the state of the docket in the Southern District of Texas, it is difficult to assess whether the transfer of this case would unduly burden an already overburdened district. The case filing statistics in the Defendants' memorandum suggest that the judges of the Southern District of Texas have no lack of work. In any event, this Court is aware that this District can readily and efficiently resolve this case through jury trial, if necessary. This factor slightly favors retention.

### 10.   Other Factors

In arguing that other factors encourage transfer to Texas, the Texas Defendants blankly assert that they would be prohibited from gaining access to family and friends if the case were tried in Maine. *Defs.' Venue Mot.* at 11. But, again, they offer no specifics. Instead, they cite two cases in which the Eighth Circuit and the Fifth Circuit reversed convictions and remanded for new trials based on the district court's failure to consider the provisions of Rule 18 in either

refusing to transfer or in transferring cases. *Id.* at 11-12 (citing *United States v. Garza*, 593 F.3d 385 (5th Cir. 2010) and *United States v. Stanko*, 528 F.3d 581 (8th Cir. 2008)). Each of these cases, however, addressed a Rule 18 transfer or refusal to transfer within a district to a more or less convenient division. *Garza*, 593 F.3d at 386; *Stanko*, 528 F.3d at 582. In each case, the district court judges had failed to consider the provisions of Rule 18 and had simply acted without regard to the convenience of the parties. *Garza*, 593 F.3d at 390; *Stanko*, 528 F.3d at 585. In the absence of some specificity from the Texas Defendants, the Court is not convinced that retention of this case in Maine would prohibit the Defendants' family and friends from attending trial, if they wish to do so.

Another factor is the state of the case. The original complaint against Mr. Rossignol was issued on June 29, 2012. *Compl.* (ECF No. 3). Mr. Charles and Ortiz-Islas were indicted on August 16, 2012. *Superseding Indictment*. The case was first set for trial on October 25, 2012 for the December 2012 criminal term. *Trial List* (ECF No. 112). After the Defendants moved to continue, the Court reset the case for trial on December 28, 2012 for the February 2013 criminal term. *Trial List* (ECF No. 115). The trial was not held due to the Texas Defendants' filing of pretrial motions on January 7, 2013. Upon the resolution of these motions, the case should be ready for trial forthwith. Any transfer at this late stage in the proceedings will cause unusual delay.

## C.    Request for a Hearing

In their original motion, the Texas Defendants requested that the Court schedule these motions for a hearing. *Defs.' Venue Mot.* at 12-13. The request was premised on their uncertainty as to what the Government was going to assert in its presumed opposition. *Id.* They suggested that the Court might wish to listen to audio recordings and receive further information about the nature of discovery. *Id.* at 13. However, after receiving the Government's response, the Defendants did not reiterate this request or make it any more specific. Accordingly, rather than further delay the disposition of this motion and in the absence of any obvious need for a hearing, the Court declines to schedule a hearing on this motion.

### D.      Motion to Sever

The Texas Defendants' motion to sever stands or falls on the resolution of the motion to transfer. As the Court has concluded that the Texas Defendants have not demonstrated that the case should be transferred to Texas, the motion to sever fails as well.

## IV.      CONCLUSION

The Court DENIES the Texas Defendants' Motion for Change in Venue and Request for Hearing on Motion (ECF No. 116) and the Texas Defendants' Motion for Severance (ECF No. 117).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODOCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 13th day of March, 2013